Opinion by
Montgomery, J.,
Plaintiff-appellee recovered a verdict of $3,535.72 against appellant Sheldon Haberman, a minor, in an action of trespass for personal injuries sustained by her when she was struck by an automobile operated by him as she was crossing Thompson Avenue in the Borough of Donora, at 6:20 P.M., D.S.T., on May 28, 1959. On plaintiff’s motion a new trial was granted because of the inadequacy of the verdict.
*319 The case was contested on both the issue of liability and of damages. On the issue of liability plaintiff contended she was struck while crossing the street at a regular crossing, whereas defendant contended she was jaywalking at a place other than the regular crossing and that he had no chance of avoiding her.
On the issue of damages plaintiff contended she had severe and lasting injury requiring hospitalization on three occasions, with two operations, one for a double hernia and one for a thyroid condition, with residual pain and discomfort persisting to the time of trial. The defendant contended that the hernia and thyroid were not caused by the accident and that plaintiff had fully recovered and was able to return to her regular employment as of December 15, 1959. ■
The record would indicate little if any dispute as to the fact that plaintiff was thrown some distance by the impact with the car, and although not rendered unconscious, was stunned and dazed; that she was removed to the hospital by ambulance and confined there for 21 days during which she received medical and therapy treatments for bruises on her chest, left elbow, left hip and the lumbar region of her back, and wore a cervical collar while there to relieve pain in her neck; that after her discharge she was attended further by her family doctor, Dr. Levin, the same one who had attended her while in the hospital, until July, 1959, when, at her own request, she was referred to Dr. Faix of Pittsburgh, an orthopedist. It was Dr. Faix who detected the hernia and thyroid condition. However, aside from those conditions he rendered treatment to plaintiff for pain in her lumbar region and gave her physiotherapy treatments monthly. It was Dr. Faix who certified the plaintiff could return to work as of December 15, 1959.
To July, 1959, when plaintiff was released by Dr. Levin to Dr. Faix, plaintiffs expenses and lost wages are itemized as follows:
*320 Dr; H. J.. Levin $109.00 •
Memorial Hospital 522.00
Ambulance 10.00
X-rays.... 120.00 (all negative)
Lost wages 5/28 to 7/14 (date her plant went.out on strike) Six . weeks, three days, Six Saturdays .at time and one half at $101.91 per week 856.04
Total. $1,617.04
If plaintiff’s disability extended to December 15, Í959, when Dr; Faix certified her to return to work, her total out-of-pocket loss, as admitted by counsel for appellant, would be increased to $2,494.87 by additional lost wages and expenses for continuing'care by Dr. Faix (but not including any expense for the hernia or thyroidectomy which occurred in 1960).
’ In granting the new trial Judge Wei.nee placed great reliance oh the testimony of Dr. Buch, who examined the plaintiff for the defendant on August 20, 1959, and again on February 7, 1961. Dr. Buch’s testimony is'reviewed in Judge Weinbe’s opinion as follows :
“That there was pain and suffering was admitted by the testimony of Dr. Joseph J. Buch on behalf of the defendant. He had examined her for the defendant on August 20, 1959 and admitted that he found muscle spasms on the left side of the neck and in the back oh the left side and in the region of the right groin. He gave as his diagnosis that the plaintiff had suffered a mild cerebral concussion; a traumatic injury to the neck on the left side with simple sprain of the muscles; contusions and sprain of the left hip with moderately severe muscle sprain; contusions of the left breast and chest and nervous shock. That she did suf *321 fer much pain and discomfort is shown by his testimony on page 298 of the record:
“ ‘My impression was I felt this girl is telling a true story and certainly there are physical findings from my examination which would indicate she has been troubled with a good bit of pain, especially in the neck and left lower back. As far as the left chest and left lower leg injury is concerned, I feel that she will be perfectly all right. I also feel that with continued treatment such as a well fitted back brace and neck collar and physiotherapy, she will improve. At present I will withhold my definite opinion as to any permanent injury to the back. I feel she has not received enough treatment to be fully recovered. I do, however, feel that she will improve quite a bit with a more rigid type of treatment. This would allow her to return to work within a month or two.’
“It may he observed that Dr. Buell again examined her on February 7, 1961, shortly before the trial, at which time he admitted that while she was improved, she still complained of some pain in the lower regions of the abdomen, left hip and left thigh and pain across her sacroiliac region. He further testified that the back condition could be based upon a type of fibromyositis aggravated by anxiety state. In other words the testimony of this witness on behalf of the defendant shows some residuals of injuries resulting from the accident as late as February 7, 1961, just two weeks before the case was called for trial.”
Although plaintiff sought to establish out-of-pocket losses to the total of $7,300, including the expenses for the hernia operation, the thyroidectomy, and lost wages occasioned thereby, it is not unreasonable to assume from the testimony of Dr. Buch that without those items there would be additional losses to the time of trial and in future over and above the $2,494.87 aforementioned because of the injuries and residual results recognized by him. Adding a reasonable esti *322 mate of these additional amounts to those considered would leave, as we review this case, very little if anything, to cover the item of pain and suffering which all of the doctors recognized as extensions to be covered by this verdict. On this basis we cannot say that the grant of a new trial shows an abuse of discretion on the part of the lower court. See Bedillion v. Frazee, 408 Pa. 281, 183 A. 2d 341.
We do not sense that this was a compromise verdict. Probably the jury ignored the claim for the hernia and thyroidectomy and supported the defendant in his contention concerning these. However, we agree with the lower court that its verdict for the other items of damage was inadequate.
Order granting a new trial affirmed.